```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT
```

FORTUNATO GARCIA,                  :
                                   :
    Plaintiff,                    :
                                   :
v.                                 :   CASE NO. 3:08CV95(DFM)
                                   :
ROBERT HEBERT, ET AL.,             :
                                   :
    Defendants.                   :

## RULING ON PENDING MOTIONS

Pending before the court are the plaintiff's motions for attorney fees (doc. #313) and costs (doc. #316). For the reasons set forth below, both motions are DENIED.

### I. Background

The court assumes familiarity with the facts surrounding the plaintiff's arrest for larceny of a police officer's wallet on Thanksgiving Day in 2006, as set forth in its ruling on the parties' cross-motions for summary judgment. Garcia v. Hebert, No. 3:08CV95(DFM), 2013 WL 1294412, at *1-5 (D. Conn. Mar. 28, 2013) (Doc. #281).

Plaintiff commenced this action in January 2008 against several state prosecutors, local police officers, and other public employees.[1] (Doc. #1). In his second amended complaint,

---

[1] Plaintiff originally named the following six defendants: (1) Robert Hebert, a police officer employed by the town of Winchester, Connecticut; (2) Lisa Killiany, a family relations counselor for the State of Connecticut employed at the Bantam Superior Court; (3) Magdalena Campos, an Assistant State's

plaintiff alleges deprivations of his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; false arrest, malicious prosecution, and abuse of process under § 1983 and state law; and defamation and intentional infliction of emotional distress under state law. (Doc. #137).  This litigation has gone on for almost seven years, generating a long and complicated docket of over 300 entries.  The case now has been completely resolved by way of pretrial rulings.

The court begins with a summary of the pertinent procedural history.  At the outset of the case, the court granted default judgment against defendant Hebert as to liability only. (Doc. #39).  In May 2008, defendants Killiany, Campos and Wittstein moved to dismiss the complaint. (Doc. #35).  Plaintiff thereafter moved for summary judgment on all claims except those against defendants Hebert and Killiany in their official capacities. (Doc. #69).  The undersigned recommended that

---

Attorney employed at the Bantam Superior Court; (4) Andrew Wittstein, supervising Assistant State's Attorney employed at the Bantam Superior Court; and (5) John Doe and (6) Mary Roe, fictitious names representing other persons who participated in the conspiracy and wrongful acts alleged in the complaint. (Doc. #1, p. 2).  All of the defendants were sued in both their individual and official capacities. (Doc. #1, p. 3).  In his second amended complaint, plaintiff substituted John Guerrera, a police officer employed by the town of Torrington, Connecticut, and Jane Serafini, a courtroom clerk employed at the Bantam Superior Court, in place of defendants John Doe and Mary Roe. (Doc. #137, pp. 2-3).

defendants' motion to dismiss be granted (doc. #94) and, in light of that ruling, also recommended that plaintiff's motion for summary judgment be denied. (Doc. #100).  District Judge Robert N. Chatigny approved and adopted both recommendations.[2] (Doc. #99, 111).

Plaintiff appealed Judge Chatigny's order granting defendants Killiany, Campos and Wittstein's motion to dismiss. (Doc. #102).  The Second Circuit Court of Appeals affirmed by summary order dated November 12, 2009.  See Garcia v. Hebert, No. 09-1615-cv, 2009 WL 3765549, at *1 (2d Cir. Nov. 12, 2009) (Doc. #127).  In its summary order, the Second Circuit agreed with this court that plaintiff's "damages claims against the prosecutors are barred by absolute prosecutorial immunity because the prosecutors were acting as 'officer[s] of the court' when performing all of the actions upon which the claims are predicated . . . [and] that the equitable remedies of injunctive and declaratory relief are unavailable absent a showing of irreparable injury and [plaintiff] has made no showing of any real or immediate threat that he will be wronged again."

---

[2] Plaintiff later moved to vacate Judge Chatigny's ruling as to Killiany, arguing that he had discovered new information that would allow him to sue Killiany in her official capacity for money damages. (Doc. #173).  The undersigned recommended denying plaintiff's motion, explaining that untimeliness alone provided a sufficient basis for denial, but that even if the court considered the merits of the motion, it nonetheless would have failed. (Doc. #193).  Judge Chatigny approved and adopted that recommendation. (Doc. #202).

3

Garcia, 2009 WL 3765549, at *1 (citations omitted).  The Second

Circuit concluded its summary order as follows:

> Notwithstanding the foregoing rulings, this Court is disturbed[3] by the allegations of prosecutorial misconduct at issue[4] and by the State of Connecticut's ostensible refusal in its brief and at oral argument to admit that were those allegations true, the practices would be, if not unconstitutional, likely illegal and certainly improper.  Accordingly, we order the Attorney General of the State of Connecticut, within 30 days of this Order, to provide this Court with a detailed report discussing what steps have been

---

[3] The Second Circuit's use of the word "disturbed" to describe the allegations of prosecutorial misconduct is similar to this court's use of the word "troubling" to describe the same allegations.  See doc. #94, p.12.

[4] The prosecutorial misconduct claim arose from allegations that it was the "common practice at the Bantam courthouse for the state's attorney to meet with a criminal defendant on the first appearance date and give him a continuance date, after which the state's attorney would announce the continuance date in court in the defendant's absence." Garcia, 2013 WL 1294412, at *3.

In this case, plaintiff appeared pro se at his first court date on December 4, 2006.  See id.  On that date, he spoke with Assistant State's Attorney Campos in the vestibule of the prosecutor's office and then left the courthouse.  Id.  After he left, Campos called plaintiff's case in court and requested a continuance date.  Id.  Superior Court Judge Richard M. Marano granted the continuance, and Serafini, who was acting as courtroom clerk that day, marked the court file "NG" to indicate a plea of not guilty, checked the box for jury election and wrote "1-5" as the continuance date.  Id.  Plaintiff did not appear on January 5, 2007, and the judge ordered his rearrest on a charge of failure to appear.  Id. at *4.  Thereafter, he was arrested and charged with failure to appear in the second degree.  Id.

At a subsequent court date, plaintiff argued through counsel that he had not been arraigned properly and moved to dismiss the failure to appear charge arguing that he did not appear before a judge on December 4th, nor did he receive notice of the January 5th continuance date.  Id.  Ultimately, the state entered a nolle prosequi and the charge was dismissed.  Id. at *5.

4

> taken to address the practice of the State's Attorney
> at the Connecticut Superior Court in Bantam, CT, and
> what steps are being taken to ensure that they will
> not continue in the future.

Id.

In response to the Second Circuit's order, the Attorney General's office[5] asked the State's Attorney's office "to prepare a report explaining the relevant practices in the Bantam Superior Court." (Doc. #313-2, p. 3). The State's Attorney's office prepared a five-page letter. (Doc. #313-2, pp. 5-9). It noted that even though the Second Circuit ordered the state "to identify . . . corrective measures for alleged practices that have never been proven, and which, in many instances, it strongly disputes," it would provide a response "out of respect for [the] Court and in an effort to establish an accurate record of the practices followed by the State's Attorney's office and the sound reasons for those practices." (Doc. #313-2, p. 5). The letter described in detail the daily routine of the office's four prosecutors, particularly their interactions with pro se defendants and the process of continuing cases. (Doc. #313-2,

---

[5]The Attorney General, who was not a party to this case, "is the state's chief *civil* legal officer, but . . . is not vested with common law, constitutional or statutory *criminal* prosecutorial authority. . . . Rather, Connecticut's criminal prosecutorial authority is vested in a Chief State's Attorney and the State's Attorneys in each of the thirteen judicial districts." (Doc. #313-2, p. 3) (emphasis in original).

pp. 6-8)  In this regard, the State's Attorney's office advised that

> to ensure a proper record is made of the continuance, the Supervising Attorney in charge of the State's Attorney's Office now has instituted a policy requiring all pro se defendants to appear in Court to have continuance dates approved. . . .  When the matter is then called on the Court docket, the prosecutor asks that the case be "continued" and places the continuance date on the record.

(Doc. #313-2, p. 8).  There was no adjudication that any practices in the Bantam Superior Court were unconstitutional, see doc. #313-2, p. 2, but the State's Attorney's office apparently modified certain of its practices.

Following the Second Circuit's order, plaintiff filed a second amended complaint wherein he substituted Guerrera and Serafini in place of defendants John Doe and Mary Roe. See footnote 1 of this ruling; doc. #137.  Thereafter, Guerrera and Serafini both moved to dismiss the complaint arguing that plaintiff failed to state a claim for relief against them and that the statute of limitations barred plaintiff's claims. (Doc. #163, 166).  Serafini also moved to dismiss the official capacity claims against her on the ground that the Eleventh Amendment bars such claims. (Doc. #166). The undersigned recommended that Guerrera's motion be denied, finding that plaintiff's claims against him were filed timely. (Doc. #182). The undersigned recommended that Serafini's motion be granted in

6

part, finding that although her statute of limitations argument failed for the same reason as Guerrera's, her Eleventh Amendment argument was correct because state officials "cannot be sued in their official capacities for retrospective relief under section 1983." Huminski v. Corsones, 386 F.3d 116, 133 (2d. Cir. 2004); doc. #192.  Judge Chatigny approved and adopted both recommendations. (Doc. #187, 202).

In 2012, Serafini, Killiany and Guerrera each filed a motion for summary judgment. (Doc. #217, 218, 220).  Plaintiff filed cross-motions for summary judgment and a motion in limine seeking to exclude from evidence a substitute surveillance tape on the basis of authenticity, arguing that the tape was inadmissible because it was not the original tape used by Guerrera as grounds for plaintiff's arrest. (Doc. #225, 227, 230, 233).  On March 27, 2013, the court granted Serafini, Killiany and Guerrera's motions for summary judgment and denied plaintiff's cross-motions for summary judgment.[6] (Doc. #277). In

---

[6]The following day, the court vacated its order on the cross-motions for summary judgment and the motion in limine because of a clerical error. (Doc. #280).  The court entered a revised order arriving at the same outcome. (Doc. #281).  Prior to the court's entry of a revised order, the Clerk of the Court entered final judgment in favor of the defendants and terminated the case.  Plaintiff appealed that final judgment to the Second Circuit arguing that the case should not have been terminated because the undersigned still was required to hold a hearing on damages and attorney fees with regard to the entry of default judgment against Hebert.  (Doc. #282).  The Clerk of the Court subsequently re-opened the case and plaintiff withdrew his

that order, the court also denied plaintiff's motion in limine. (Doc. #277).

In June 2013, Hebert moved to set aside the default judgment entered against him in June 2008. (Doc. #288). The court granted Hebert's motion, finding that (1) his default was not willful, as there was no indication in the record that notice of the default was mailed to his correct address; (2) setting aside the default would not prejudice plaintiff; and (3) Hebert had a meritorious defense to the claims against him. (Doc. #298). In that ruling, the court also dismissed the official capacity claims against Hebert. (Doc. #298). Plaintiff filed a motion for reconsideration of that ruling. (Doc. #300). The court granted reconsideration but ultimately adhered to its prior ruling on the motion. (Doc. #310).

Most recently, in May 2014, the court sua sponte entered summary judgment in favor of Hebert. (Doc. #311). Final judgment entered in favor of all defendants. (Doc. #312). Plaintiff appealed that judgment to the Second Circuit, where it is currently pending.[7] See Garcia v. Hebert, No. 14-2185 (2d Cir. filed June 11, 2014) (Doc. #319).

---

appeal. See Garcia v. Hebert, No. 13-1363, doc. #19 (2d. Cir. May 9, 2013).

[7]The Second Circuit has instructed "that the filing of a notice of appeal does not divest the district court of jurisdiction to decide any of the postjudgment motions listed in Fed. R. App. P. 4(a)(4)(A), if timely filed." Hodge ex rel.

8

In sum, plaintiff has not prevailed on any dispositive motion and has received unfavorable rulings on all four of his motions for summary judgment. (See Doc. #94, 99, 281).  He was unsuccessful on appeal of this court's ruling on defendants Killiany, Campos and Wittstein's motion to dismiss.  Garcia, 2009 WL 3765549, at *1.  Conversely, the defendants prevailed on two motions to dismiss (doc. #94, 99, 192, 202) and three motions for summary judgment. (Doc. #281).  The court sua sponte granted summary judgment in Hebert's favor. (Doc. #311).  The only dispositive motion on which the defendants did not prevail was Guerrera's motion to dismiss, however, Guerrera later prevailed on summary judgment. (Doc. #182, 187, 281).

The court now considers plaintiff's motion for attorney fees and costs pursuant to 42 U.S.C. § 1988.  Plaintiff argues that despite failing on the merits of his claims, he nonetheless is a "prevailing party" entitled to an award of attorney fees and costs because the litigation conferred a "meaningful public benefit." (Doc. #313, 316).  Specifically, plaintiff seeks

---

Skiff v. Hodge, 269 F.3d 155, 157 (2d Cir. 2001).  This includes motions for attorney fees under Fed. R. Civ. P. 54.  See Fed. R. App. P. 4(a)(4)(A)(iii).  Plaintiff timely filed his motion for attorney fees in accordance with Rule 54 and thus the court properly may decide the motion despite the pendency of his appeal.
    With regard to plaintiff's motion for costs, the Second Circuit has held that a decision to award costs under Rule 54 "rests within the sound discretion of the district court." Dattner v. Conagra Foods, Inc., 458 F.3d 98, 100 (2d Cir. 2006) (internal quotation marks omitted).

9

attorney fees in the amount of $1,504,554,[8] plus "substantial" litigation costs, a schedule of which plaintiff proposes to provide to the Clerk of the Court in the event of success on this motion. (Doc. #316).

II.  Discussion

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser . . . absent explicit statutory authority, . . . such as . . . the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988."  Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 602-03 (2001) (internal quotation marks omitted).  In a § 1983 action such as this, § 1988 permits the court, in its discretion, to "allow the prevailing party, other than the United States, a reasonable attorney's fee."  42 U.S.C. § 1988 (b); see Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (holding that "[t]he court necessarily has discretion in making this equitable judgment").  To be considered a prevailing party, "a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially

---

[8] Over the nearly seven years of this litigation, Attorney Whitney North Seymour, Jr. expended 1356.4 hours at an hourly rate of $750, for a total of $1,017,300 (Doc. #313-3, p. 6) and Attorney Gabriel North Seymour expended 1624.18 hours at an hourly rate of $300, for a total of $487,254. (Doc. #315, p. 9).

sanctioned." <u>Robertson v. Guiliani</u>, 346 F.3d 75, 79 (2d Cir. 2003).  To the contrary,

> [a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change.  Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties.

<u>Buckhannon Bd. & Care Home</u>, 532 U.S. at 605.

Plaintiff did not prevail on the merits of his claims against any of the defendants.  Notwithstanding, he argues that he is a "prevailing party" because he "assembled evidence that has exposed multiple civil rights abuses and exhibit[ed] deprivations of fundamental civil rights through police and state criminal court practices and official misconduct." (Doc. #313, p. 2).  Specifically, he points to the fact that he succeeded in obtaining a summary order from the Second Circuit directing the Attorney General to investigate and provide a "detailed report discussing what steps have been taken to address" the allegations of prosecutorial misconduct at the Bantam Superior Court.  <u>Garcia v. Hebert et al.</u>, 2009 WL 3765549, at *1.

For support, plaintiff relies on the Ninth Circuit's holding in <u>McCown v. City of Fontana</u>, 565 F.3d 1097 (2008)--a case that is readily distinguishable.  In <u>McCown</u>, the parties

entered into a settlement agreement in which the defendant stipulated that the plaintiff was the prevailing party and agreed that the district court would determine the amount of attorney fees owed to the plaintiff.  Id. at 1101.  In contrast, the parties here did not enter into a settlement agreement, or any other judicially enforceable agreement, nor did any of the defendants stipulate that the plaintiff is a prevailing party on any of his claims or that he is otherwise entitled to an award of attorney fees.

Similarly, the additional case law cited by plaintiff is legally unpersuasive, factually distinct, and contradictory to his arguments.  See, e.g., Tex. State Teachers v. Garland, 489 U.S. 782, 792 (1989) (holding that "at a minimum," movant must point to resolution of dispute that materially alters parties' legal relationship); Riverside v. Rivera, 477 U.S. 561, 567 (1986) (affirming decision that the award of attorney fees to plaintiffs, who received a favorable jury verdict on all 37 claims against defendants, was not excessive merely because it was in excess of the amount of damages awarded by the jury); Hensley, 461 U.S. at 427 (holding that plaintiffs, who were successful on five out of six claims alleging constitutional violations by defendants, were entitled to attorney fees and costs on all claims, including the one  related, but unsuccessful claim).

12

Plaintiff's argument lacks merit because his legal relationship with the defendants was not altered as a result of this litigation. He has stated no basis, in fact or in law, upon which the court could conclude that he is a prevailing party entitled to an award of attorney fees and costs.

III. Conclusion

Based on the foregoing, the plaintiff's motions for attorney fees (doc. #313) and costs (doc. #316) are DENIED. This is not a recommended ruling. The parties have consented to the authority of a magistrate judge in all proceedings in this case. (Doc. #276, 309).

SO ORDERED this 3rd day of December, 2014 at Hartford, Connecticut.

_____/s/_____
             Donna F. Martinez
             United States Magistrate Judge